UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STUART T. UPTON,<br><br>                                        Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI, Acting Commissioner, Social Security Administration,<br><br>                                        Defendant. | Case No.:  20-CV-325 JLS (NLS)<br><br>**ORDER (1) GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, (2) DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT, AND (3) REMANDING MATTER FOR FURTHER ADMINISTRATIVE PROCEEDINGS**<br><br>(ECF Nos. 17, 18) |

On March 20, 2020, Plaintiff Stuart J. Upton ("Plaintiff") filed an Amended Complaint ("Am. Compl.," ECF No. 8) pursuant to 42 U.S.C. § 405(g), which seeks judicial review of a decision by Defendant Kilolo Kijakazi, the Acting Commissioner of the Social Security Administration ("Defendant" or the "Commissioner"), who denied Plaintiff's application for disability insurance benefits.  Plaintiff filed a Motion for Summary Judgment ("Mot.," ECF No. 17),[1] and in response, Defendant filed a Cross-

---

[1] Although this document is titled "Petitioner's Brief on the Merits," the Court will construe the filing as a motion for summary judgment, given that Plaintiff is filing *pro se*.  *See infra* at 6.

1  Motion for Summary Judgment ("Cross-Mot.," ECF No. 18-1). Plaintiff also filed a Reply
2  in Support of his Motion for Summary Judgment and in Opposition to Defendant's Cross-
3  Motion for Summary Judgment ("Reply," ECF No. 19). Having carefully considered the
4  Parties' arguments and the law and for the reasons set forth herein, the Court **GRANTS**
5  Plaintiff's Motion for Summary Judgment, **DENIES** Defendant's Cross-Motion for
6  Summary Judgment, and **REMANDS** the case for further administrative proceedings.

**FACTS AND PROCEDURAL BACKGROUND**

8        Plaintiff is a former soldier who suffers from a variety of medical ailments. After
9  serving more than twenty-two years and completing four combat deployments, Plaintiff
10  was honorably discharged from the Marine Corps as a lieutenant colonel on January 1,
11  2016. Am. Compl. ¶ 1.1; Administrative Record ("AR," ECF No. 15) at 139–40.[2] Plaintiff
12  has a 90% disability rating from the Department of Veterans Affairs (the "VA"), and
13  Plaintiff is currently appealing for a 100% disability rating. Am. Compl. ¶ 1.2. Plaintiff
14  suffers from a variety of ailments, including chronic cervical, thoracic, and lumbar strain
15  and sprain; iliotibial band syndrome; asthma; anxiety; post-traumatic stress disorder
16  ("PTSD"); gastrointestinal disorders; essential hypertension; sleep apnea; tension
17  headaches; rashes; arm radiculopathy; and a heart condition. *Id.* ¶¶ 4.1–4.4. For a short
18  time, Plaintiff worked as a Reserve Officer's Training Corps ("ROTC") instructor, but after
19  learning that he would have to undergo a psychological evaluation because he had a PTSD
20  rating of more than 30% from the VA, Plaintiff resigned. *Id.* ¶¶ 1.3, 5.34; AR at 149–50.

21        On October 31, 2016, Plaintiff filed an application for a period of disability and
22  disability insurance benefits under Title II of the Social Security Act. AR at 293–94.
23  Plaintiff claimed to be unable to work due to his disabling condition beginning on
24  September 27, 2016. *Id.* at 293. The Social Security Administration (the "SSA") denied
25  Plaintiff's claims initially on December 22, 2016, *see id.* at 187–90, and, following a

26

27
28  _____

[2] In citing to page numbers within the Administrative Record, the Court will refer to the consecutive page numbers Bates stamped in the lower right corner of each page.

2

request for reconsideration, *see id.* at 191, again on March 31, 2017, *id.* at 192–93.  On May 15, 2017, Plaintiff requested a hearing before an administrative law judge ("ALJ"). *Id.* at 194.

At a hearing on February 22, 2019, Plaintiff and a vocational expert ("VE") testified. *Id*. at 135–58.  Per a "Notice of Decision – Unfavorable" dated July 3, 2019, the ALJ found that Plaintiff had not been under a disability since his application date.  *Id.* at 17–32.  On December 31, 2019, the Appeals Council denied Plaintiff's request for review, making the ALJ's ruling the final decision for purposes of judicial review.  *Id.* at 1–4.  Plaintiff then commenced this action pursuant to section 405(g) on a *pro se* basis.  *See generally* Am. Compl.

## SUMMARY OF THE ALJ'S FINDINGS

In rendering his decision, the ALJ followed the SSA's five-step sequential evaluation process for determining whether an individual is disabled.  *See Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012) (citing 20 C.F.R. §§ 404.1520(a), 416.920(a)); *see generally* AR at 21–32.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date of September 27, 2016.  AR at 23.

At step two, the ALJ found that Plaintiff had the following severe impairments: chronic cervical, thoracic, and lumbar strain and sprain; iliotibial band syndrome; asthma; anxiety; and PTSD.  *Id.*  The ALJ further found that Plaintiff had the following non-severe impairments: hypertension; hypercholesterolemia; obstructive sleep apnea; depression; tinnitus/hearing loss; obesity; and marijuana use.  *Id.* at 23–24.  The ALJ considered the combination of Plaintiff's severe and non-severe impairments in his further findings.  *Id.* at 24.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in the Commissioner's Listing of Impairments.  *Id.* at 24–26 (citing 20 C.F.R. §§ 404.1520(d), 404.1525 & 404.1526).  Next, the ALJ determined that Plaintiff had the residual functional

capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b).  *Id.* at 26–30.  The ALJ also determined that, given the combination of Plaintiff's severe and non-severe impairments, Plaintiff was limited in any job to "lifting and/or carrying 20 pounds occasionally and 10 pounds frequently; standing and/or walking 6-hours in an 8-hour day; sitting for 6-hours in an 8-hour day; occasionally performing postural activities; [and] no exposure to high concentrations to extreme cold, heat, humidity, fumes, odors, dusts, and environmental irritants."  *Id.* at 26.  "In addition, [Plaintiff] is limited to unskilled, non-public, simple, repetitive tasks; and noncollaborative interaction with coworkers and supervisors."  *Id.*

In arriving at this determination, the ALJ used evidence from the record to dispute Plaintiff's allegations of disability, *id.* at 26–30, including testimony from State Agency medical consultants Drs. W. Hakkarinen and Julie Bruno, *id.* at 29.  In doing so, however, the ALJ gave little weight to a contrary opinion by Dr. Everett Scott expressed in a Department of Veterans Affairs August 15, 2016 "Back (Thoracolumbar Spine) Conditions Disability Benefits Questionnaire."  *See id.* at 29–30; 739–749.  Dr. Scott indicated therein that Plaintiff was "unable to sit or stand for more than 20 minutes," which appeared to be partially based on Plaintiff's representation that he could not sit or stand for more than twenty minutes without his leg giving out.  *Id.* at 748; *see id.* at 743 (noting that "patient's leg involuntarily gives way after approx. 20 minutes of standing").  The ALJ stated that Dr. Scott's opinion was "given little weight as it is unclear if this limitation applies to sitting/standing at one time or in an 8-hour day."  *Id*. at 29–30.

At step four, the ALJ accepted the VE's opinion that Plaintiff could no longer perform any past relevant work as an instructor, infantry unit leader, or public relations worker in light of his RFC.  *Id.* at 30.

At step five, the ALJ accepted the VE's assessment that a hypothetical person with Plaintiff's vocational profile could make a successful adjustment to other work that existed in significant numbers in the national economy.  *Id.* at 31–32.  Namely, the VE, and consequently the ALJ, concluded that Plaintiff would be able to perform the vocational

requirements of an office helper, a materials distributor, or a cleaner. *Id.* at 31.  The ALJ noted that each of these occupations has at least 40,000 jobs in the national economy. *Id.* Accordingly, the ALJ found that Plaintiff was not disabled. *Id.* at 32.

## LEGAL STANDARD

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991).  Substantial evidence means "more than a mere scintilla" but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Desrosiers v. Sec'y of Health & Hum. Servs.*, 846 F.2d 573, 575–76 (9th Cir. 1988).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401.  This Court must review the record as a whole and consider adverse as well as supporting evidence. *Green v. Heckler*, 803 F.2d 528, 529–30 (9th Cir. 1986).  Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. *Gallant v. Heckler*, 753 F.2d 1450, 1452 (9th Cir. 1984).

In general, where an ALJ and a plaintiff disagree on an interpretation of the medical record, the ALJ's opinion controls so long as the ALJ gives sufficient reasoning to justify his opinion.  "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld," *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002), but the ALJ's findings "must be supported by a specific, cogent reason," *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990).  A court can only set aside an ALJ's finding if "it is not supported by substantial evidence or if it is based on legal error." *Ukolov v. Barnhart*, 420 F.3d 1002, 1004 (9th Cir. 2005); *cf. Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) ("The Secretary's decision to deny benefits will be disturbed only if it is not supported by substantial evidence or it is based on legal error.") (internal quotation marks and citations omitted).

/ / /

## ANALYSIS

As an initial matter, although Plaintiff did not expressly file a motion for summary judgment, the Court construes the "Petitioner's Brief on the Merits" as such.  *See generally* Mot.  Documents filed *pro se* are liberally construed.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also Ricotta v. California*, 4 F. Supp. 2d 961, 986 (S.D. Cal. 1998) ("[T]he standard practice of federal courts is to interpret filings by *pro se* litigants liberally and to afford greater latitude as a matter of judicial discretion."), *aff'd*, 173 F.3d 861 (9th Cir. 1999).  Because Plaintiff is proceeding *pro se* in this action, the Court will liberally construe Petitioner's Brief on the Merits as a motion for summary judgment.  *See Erickson*, 551 U.S. at 94; *see generally* Mot.  In addition, Defendant styled its response as a "Cross-Motion for Summary Judgment and Opposition to Plaintiff's Motion for Summary Judgment," *see generally* Cross-Mot., strongly signaling that Defendant also recognized Plaintiff's brief to be a motion for summary judgment.  Accordingly, the Court will treat the motions before it as Plaintiff's motion for summary judgment and Defendant's cross-motion for summary judgment.

The Parties primarily disagree as to whether Plaintiff's impairments are sufficiently severe to entitle Plaintiff to disability insurance benefits.  *See generally* Mot.; Cross-Mot.; Reply.  As to most of the disputed evidence, the Court finds that the ALJ provided specific and cogent reasoning supported by substantial evidence and lacking in legal error.  *See Thomas*, 278 F.3d at 954; *Ukolov*, 420 F.3d at 1004; *Rashad*, 903 F.2d at 1231; AR at 26–30.  However, the Court finds that the ALJ did not provide cogent reasoning as to why he discounted one of the medical opinions and portions of Plaintiff's testimony.

## I.    The ALJ Did Not Adequately Explain Why He Discounted Dr. Scott's Medical Opinion

In determining whether a claimant is disabled, an ALJ must give greater weight to an examining physician's testimony than to a nonexamining physician's testimony.  The Ninth Circuit distinguishes between three types of physicians in social security cases: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat

6

the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995), *as amended* (Apr. 9, 1996). An examining physician's opinion is entitled to greater weight than a nonexamining physician's opinion. *Id.* (citing *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990); *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir. 1984)); *see also Wildman v. Astrue*, 596 F.3d 959, 967 (8th Cir. 2010) ("[T]he opinions of nonexamining sources are generally . . . given less weight than those of examining sources.") (internal quotation marks and citations omitted). Importantly, "the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830–31 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995)).

First, the ALJ incorrectly gave greater weight to the opinions of nonexamining physicians than to an examining physician. Drs. Hakkarinen and Bruno are nonexamining physicians because they analyzed the medical record without examining Plaintiff. *See Lester*, 81 F.3d at 830; AR at 29.[3] In contrast, Dr. Scott is an examining physician because he physically examined Plaintiff. *See Lester*, 81 F.3d at 830; AR at 748. Thus, although Ninth Circuit law requires that Dr. Scott's opinion be given greater weight than that of Drs. Hakkarinen and Bruno, the ALJ incorrectly did the opposite. *See Lester*, 81 F.3d at 830; AR at 29–30.

Next, if there is a conflict between medical opinions, the ALJ must give specific and legitimate reasons for discounting or rejecting an examining physician's—such as Dr. Scott—testimony. Dr. Scott opined that Plaintiff could not stand or sit for more than twenty minutes, AR at 733, 738, but the ALJ gave Dr. Scott's opinion little weight because "it is unclear if this limitation applies to sitting/standing at one time or in an 8-hour day," *id.* at

---

[3] Here, the Administrative Record notes: "W. Hakkarinen, M.D., a State Agency medical consultant, *reviewed* the claimant's physical *medical record*," and "State Agency mental consultant, Julie Bruno, Psy.D., *examined* the claimant's mental impairment *claims* on the initial level . . . ." AR at 29 (emphasis added).

29–30.  The ALJ failed to provide specific and legitimate reasons why Dr. Scott's "unclear" opinion was given less weight than the nonexamining physicians' opinions.  In the Court's view, if Plaintiff could not sit or stand for more than twenty minutes in a given day, he likely could not work as a helper, materials distributor, or cleaner, the jobs recommended by the VE.  *See id.* at 30–31.  Likewise, few employers would be likely to hire Plaintiff if he could only stand or sit for twenty minutes at a time without taking a break to lie down.  Either way, full and proper consideration of Dr. Scott's medical opinion could very well result in a finding that Plaintiff is disabled.  The ALJ's failure to afford Dr. Scott's opinion due consideration was legal error.

Finally, even if the ALJ could give specific and legitimate reasons why Dr. Scott's "unclear" opinion was given less weight, these reasons must be based on the medical record.  The ALJ found that Dr. Scott's opinion was unclear, but this is not a reason based on substantial record evidence.  *See Lester*, 81 F.3d at 831; AR at 29–30.  Thus, the Court finds that the ALJ did not provide reasoning, based on substantial evidence in the medical record, for discounting Dr. Scott's testimony.

In sum, the ALJ failed to give legitimate reasons, based on the medical record, why Dr. Scott's opinion was given less weight than Drs. Hakkarinen and Bruno's opinions.

## II.  The ALJ Must Provide Specific Reasons for Discounting Plaintiff's Testimony

Although an ALJ need not accept a claimant's subjective testimony, the ALJ must give specific reasons if he does not do so.  It is a legal error for the ALJ to discount the claimant's testimony solely because the claimant's claimed experience is disproportionate to the medical evidence.  *See Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986) (per curiam); *see also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) ("Once the claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence.") (internal quotation marks and citations omitted).  If the claimant presents evidence of an impairment, and the ALJ does not argue that the claimant is malingering, the ALJ may reject the claimant's testimony only for

"specific, clear, and convincing reasons," and not simply from general findings. *Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014) (citing *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012)); *Lester*, 81 F.3d at 834.

Here, consistent with Dr. Scott's opinion, Plaintiff testified that he could not stand or sit for more than twenty minutes without his leg giving out. AR at 150. It is legal error for the ALJ to reject this subjective testimony solely because Plaintiff's experience is seemingly disproportionate to the medical evidence. *See Cotton*, 799 F.2d at 1408. This is doubly true where Plaintiff's statement was accepted by an examining physician, as appears to have been the case here with Dr. Scott. *See* AR at 738. Because Plaintiff provided medical evidence of his impairment, *see generally id.*, and the ALJ did not find that Plaintiff was malingering, *see generally id.* at 20–32, the ALJ was required to provide "specific, clear, and convincing reasons" for rejecting Plaintiff's subjective testimony that he is unable to sit or stand for more than twenty minutes without his leg giving out. *See Burrell*, 775 F.3d at 1137; *Lester*, 81 F.3d at 834. The ALJ failed to do so here. Accordingly, the Court finds that the ALJ committed legal error in discounting Plaintiff's subjective testimony solely because his experience purportedly was disproportionate to the medical evidence.

## III. The Court Remands the Case to the ALJ

A district court should rarely reverse an ALJ's decision and award benefits itself; instead, the court generally should remand the case for further deliberation. "[I]f the agency has not considered all relevant factors . . . the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985); *see also I.N.S. v. Orlando Ventura*, 537 U.S. 12, 16 (2002) ("Generally speaking, a court of appeals should remand a case to an agency for decision of a matter that statutes place primarily in agency hands."). Likewise, if the medical record appears to substantially support the ALJ's decision that a plaintiff is not disabled, the proper remedy is to remand the case to the SSA. *See Salvador* / / /

*v. Sullivan*, 917 F.2d 13, 15 (9th Cir. 1990).  Thus, remand is almost always the proper remedy for a disability benefits appeal.[4]

Although the ALJ did not provide sufficient reasons for affording Dr. Scott's opinion little weight and discrediting Plaintiff's testimony, the fullness of the medical record suggests that the proper remedy is to remand this case for further administrative proceedings.  The ALJ must consider Dr. Scott's testimony as a relevant factor.  *See Fla. Power*, 470 U.S. at 744; *Lester*, 81 F.3d at 830–31.  However, since the medical record substantially supports the ALJ's decision that Plaintiff is not disabled, *see generally* AR at 20–32; *supra*, the Court finds that the proper remedy is to remand this case to the SSA rather than to award Plaintiff disability benefits.  *See Salvador*, 917 F.2d at 15.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiff's Motion for Summary Judgment (ECF No. 17), **DENIES** Defendant's Cross-Motion for Summary Judgment (ECF No. 18-1), and **ORDERS** that Judgment be entered **REVERSING** the decision of the Commissioner and **REMANDING** this matter for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**

Dated:  August 9, 2021

*Janis L. Sammartino*
Hon. Janis L. Sammartino
United States District Judge

---

[4] The Ninth Circuit uses a three-step process (the so-called "*Varney* rule") to determine whether a case is a "rare exception" meriting a district court's reversal of the ALJ's decision without remanding for more information.  *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1100–02 (9th Cir. 2014) (citing *Varney v. Sec'y of Health & Hum. Servs.*, 859 F.2d 1396 (9th Cir. 1988)).  Given the limited issues before this Court and the fullness of the medical record, the Court finds that remand is appropriate and declines to consider whether this case is a "rare exception" under the *Varney* rule.

20-CV-325 JLS (NLS)